**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                    Case No.: 26-40129

John G. Koch.                                      Chapter 11 Case

          Debtor.

## DEBTOR'S MODIFIED DISCLOSURE STATEMENT

## INTRODUCTION

This Disclosure Statement dated July    , 2026 (the "Disclosure Statement"), is submitted by John G. Koch (the "Debtor"). The Disclosure Statement contains information about the Debtor's financial affairs and describes the Debtor's modified Plan of Reorganization (the "Plan") (ECF No.   ). A copy of the Plan accompanies this Disclosure Statement. The Debtor is seeking confirmation of the Plan. This Disclosure Statement is intended to provide you with adequate information to enable you to make an informed decision on whether to vote to accept or reject the Plan.

The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on January 14, 2026 with the intention of reorganizing his debts. The Plan provides for the reorganization and partial repayment of the Debtor's debt. The Debtor believes that the Plan complies with all requirements of the Bankruptcy Code and that it should be confirmed by the Court.

The definitions set forth in the Plan are incorporated and used in this Disclosure Statement. Capitalized terms used in this Disclosure Statement shall have the meanings ascribed to them in the Plan or in the Bankruptcy Code unless the context requires otherwise.

## DISCLOSURE STATEMENT PUROSE AND OBJECTION DEADLINES

This Disclosure Statement is provided to provide creditors with information relevant to the Plan and to enable creditors to make informed decisions concerning their vote on the Plan. Parts of the Plan are incorporated into this Disclosure Statement. If you want additional information about the Plan or Disclosure Statement, you may contact, the Debtor' attorney, Mary Sieling, PO Box 1116, Minnetonka, Minnesota 55345; telephone: 612-325-1191; email: mary@sielinglaw.com.

Creditors should read the Plan and Disclosure Statement in their entirety. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

The court has entered an order setting the date of the hearing on confirmation of the Plan and establishing the deadline for the submission of ballots casting votes to accept or reject the

Plan. A copy of the order is included in the materials accompanying this Disclosure Statement. You may vote for the Plan by completing the enclosed ballot and mailing it to the Debtor's Counsel, Sieling Law, PO Box 1116, Minnetonka, Minnesota 55345. Ballots that are not submitted timely will not be counted. At the confirmation hearing, the Court will determine whether a sufficient number of creditors have accepted the Plan, and whether to confirm the Plan.

The court order approving this Disclosure Statement sets a deadline for objections. Objections to the confirmation of the Plan must be filed with the Court and served upon Debtor's Counsel, Sieling Law, PO Box 1116, Minnetonka, Minnesota 55345, and other parties in interest by the appropriate deadline and in accordance with the Applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Minnesota. Generally, objections must be served and filed electronically through the CM/ECF system.

Section 1129 (a) of the Code imposes certain conditions for the confirmation of a plan of reorganization. These conditions include the requirement that all classes of claims and interests have accepted the plan or are not impaired. Section 1129 also establishes the number and dollar amount of claims that must vote in favor of a plan in order for a class to have accepted the plan.

If one or more classes reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan affords fair and equitable treatment to the class rejecting it. Pursuant to 11 U.S.C. §1129(b), the Plan may be confirmed even if a class of claims or interests rejects it so long as the Plan provides that (1) each holder of a claim or interest in the rejecting class receives the value of that claim or interest; or (2) no longer of a claim or interest junior to those held by members of the rejecting class will receive or retain value under the Plan. The Debtor reserves the right to seek confirmation under 11 U.S.C. §1129(b). These statements are intended only to briefly summarize the requirements for confirmation that are established in Section 1129. The proponent of a plan must meet all applicable conditions set forth in this section of the Code in order to obtain confirmation of the Plan. These statements do not address all applicable conditions and criteria for confirmation; and creditors are urged to consult with their counsel and advisors, and to review the applicable provisions of the Code independently.

No representations concerning the Debtor, particularly as to his future business operations, his financial affairs, the value of his property, other than those set forth in this Disclosure Statement, are authorized by the Debtor. ANY REPRESENTATION OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR OR TO THE UNITED STATES TRUSTEE, WHO, IN TURN, SHALL DELIVER THIS INFORMATION TO THE BANKRUTPCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

The financial information contained in this Disclosure Statement has been provided by the Debtor but has not been independently reviewed or audited. All statements concerning financial data are made in good faith and are intended to be as complete and as accurate as possible within these limitations. Neither the Debtor nor its counsel are aware of any inaccuracies.

## NATURE AND HISTORY OF THE DEBTOR'S FINANCIAL AFFAIRS

The Debtor has an ownership interest in the following businesses that are currently operating:

| Business Name | Business Nature | % ownership | Liquidation Value | Comments on Business |
|---|---|---|---|---|
| Syagrus Systems, LLC | Manufacturing semiconductor chips | 77% | $0.00 | Syagrus filed a chapter 11 bankruptcy, case no. 25-31901. The Debtor will keep his equity interest. The Debtor will not receive distributions for at least five years, beyond his regular salary of $138,000.00. |
| J Group, LLC | Owns real property at 317 Main St South, Stillwater, MN 55082 | 90% | Listed for sale for $2,900,000. See blow for estimated costs of sale and estimated net payable under the Plan. | Brett Kostuch, a non-insider, owns the other 10% of J Group. The Debtor does not receive an income from this business and does not expect to receive any money for his equity. |
| Stillwater Holdings, LLC | Operates Gios restaurant and Portside bar in J Group property | 100% | $0.00 | Stillwater Holdings filed a Chapter 11 bankruptcy, case number 26-31580. The Debtor anticipates that the assets of this business will be sold with the J Group real estate. If the eventual buyer does not want such assets, the company will likely liquidate. |

3

| | | | | The Debtor does not receive a salary from this business and he is not expected to received any money for his equity. |
| --- | --- | --- | --- | --- |

The Debtor also holds an ownership interest in the following companies, but such companies have ceased all or nearly all operations:

| Business Name | Business Nature | % ownership | Remaining Value | |
| --- | --- | --- | --- | --- |
| The Fixxers, LLC | Handyman repair | 100% | $0.00 | This business does not have any current operations, and ceased operations in 2022. The Debtor receives no income from this business. |
| Bennett and Koch | Construction | 100% | $0.00 | This business ceased operation in 2022 and filed a final tax return that year. The Debtor receives no income from this business. |
| Kim Jo Properties | Single asset real estate | 100% | $0.00 | This business ceased operations in 2025. The Debtor receives no income from this business. The real estate owned by the business sold in June 2025 with net proceeds of $297,204. The net proceeds were used to fund Syagrus and Stillwater Holdings. |
| Koch Companies, Inc. | Operated the Dock Restaurant | 100% | $0.00 | This company ceased operations in March 2025 and final tax returns have been filed for the company. The debtor receives no income from it. |

**CIRCUMSTANCES LEADING TO THE BANKRUPTCY FILING AND PREFILING EFFORTS TO RESTRUCTION**

Prior to the commencement of this case, the Debtor took substantial steps to restructure his business and financial affairs.

First, the Debtor shut down his construction businesses, Bennett and Koch and the Fixxers, This freed up his time and financial resources to focus on his remaining business ventures. Also, the Debtor sold the KimJo Property real estate, using the bulk of the proceeds toward the Stillwater Holdings restaurant businesses which operates in the J Group real estate. The Debtor's intent with funding the restaurant businesses is to maintain the value of the real estate. The Debtor was advised that having operating businesses and paying tenants could make real estate more attractive to potential buyers.

The Debtor also restructured the nature of Syagrus Systems, which continues its restructuring process in its Chapter 11 bankruptcy, case number 25-31901. The Debtor decided to abandon the tooling side of Syagrus. In turn, Syagrus terminated employees who were engaged in the tooling business and negotiated with its landlord for the surrender of the leased premises that were used in the tooling business. Syagrus retained the tooling manufacturing equipment, as it can be used in the remaining business operations. Syagrus has been able to refocus its efforts primarily on the semiconductor chip manufacturing business, while simultaneously staunching other losses.

**TRANSACTIONS DURING THE CASE**

During the pendency of the case, the Debtor has conducted his financial affairs in the ordinary course.

No committee of unsecured creditors is appointed in this case.

The Debtor has not engaged in any transactions with insiders during the pendency of the case; except that he and his non-filing spouse share living expenses. To simplify expenses, the Debtor primarily pays the loan on his vehicle, insurance, and the mortgage on the property where he and his spouse reside. Meanwhile, the spouse pays for her vehicle loan, groceries, most utilities and other household expenses. The combined post-petition expenses of the Debtor and his spouse are substantially similar to the expenses disclosed on the Debtor's Schedule J. Exhibit B shows the joint income and household expenses of the Debtor and his spouse. Through the duration of the Plan, the Debtor and spouse may share necessary household expenses. The income remains consistent throughout the plan while expenses increase slightly based on expected cost of living.

**DESCRIPTION OF THE PLAN**

The Debtor will fund the plan using net sale proceeds from the sale of the real property owned by J Group, located at 317 Main Street South, Stillwater, MN 55082. In addition, the Debtor will pay his projected net disposable income over five years.

Priority Claims: Priority unsecured tax claims entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code include the claims of the United States Internal Revenue Service and the

5

Minnesota Department of Revenue will be paid in full, with interest over four years beginning the month after the effective date.

Administrative Expense Claims: Administrative expenses entitled to priority pursuant to §503(d)(2) or §503(a) of the Bankruptcy Code excluding any claims included in any other class under the Plan. These claims include accounting fees and attorneys' fees for the Debtor's attorneys as may be approved and awarded by the Court. The Debtor estimates administrative priority claims for his bankruptcy attorney, Sieling Law, will be approximately $12,000.00 as of the date of confirmation.  The Debtor does not owe any accounting fees at this time, but each year of the plan, he will pay $2,500.00 to his accountant for preparation of personal tax returns.   Allowed administrative expenses shall be paid in full to the extent allowed by the Court, on the Effective Date; or otherwise as agreed by the holders of such claims.

United States Trustee Fees: The Debtor estimates that unpaid U.S. Trustee fees, court fees, and other fees assessable pursuant to these provisions, will be less than $1,000 as of the date of confirmation. All such fees and expenses will be paid on the Effective Date from Debtor' income. Debtor shall continue to pay those fees authorized and assessed or otherwise payable in accordance with 28 U.S. C. § 1930, following confirmation until such time as this Chapter 11 case is closed, dismissed or converted. After confirmation of the Plan, the Debtor shall submit quarterly operating reports to the United States Trustee each quarter (or portion thereof) until this Chapter 11 case is closed, dismissed or converted. These reports shall be in the format prescribed by the United States Trustee.

Secured Claim – Wells Fargo Bank, Class 1A: The claim of Wells Fargo Bank, N.A., doing business as Wells Fargo Auto, is secured by a lien on the Debtor's 2024 Chevrolet Silverado 1500. Wells Fargo filed a proof of claim for a secured debt of $50,805.86, plus interest at a rate of 8.79%. The Debtor will continue to timely pay Wells Fargo $1,100.94 per month pursuant to the agreement until the secured claim, with interest, is paid in full.  Wells Fargo will retain its lien on the vehicle with the same priority, dignity, and effect as its pre-petition lien until the secured claim is fully paid. After Wells Fargo receives full payment of its claim, it will execute a release of its lien.

Secured Claim - NewRez, LLC, Class 1B: The claim of NewRez is secured by a mortgage on the property located at 786 Country Lakes Drive, Circle Pines, Minnesota 55014, which is the Debtor's homestead.  The current balance on the mortgage loan is approximately $183,855.  The Debtor or spouse will continue to timely pay NewRez the regular monthly payment pursuant to the agreement with NewRez until the secured claim is paid in full.  NewRez shall retain its mortgage lien on the property with the same priority, dignity, and effect as its pre-petition mortgage lien until the secured claim is fully paid. After Newrez receives the payment pursuant to this article, it shall execute and record a mortgage satisfaction.

General Unsecured Claims, Class 2: Class 2 includes all allowed pre-petition, unclassified non-priority claims against the Debtor that are not entitled to priority.  Pursuant to the Bankruptcy schedules and the filed proofs of claim, the Debtor believes the general unsecured claims total

6

approximately $5,847,961.00[1].  However, as set forth in footnote one, the general unsecured claims total could be as low as $3,304,432, given some creditors may be paid directly by the Debtor's businesses. Holders of Allowed Class 2 claims will receive their pro rata share of the Debtor's interest in the net proceeds from the sale of the J Group Real Estate (after the mortgage, real estate taxes, realtor commission and other J Group debt is paid as estimated below).

The J Group property is listed for sale with brokers Ian Thompson and John Thompson with Transwestern real estate. The J Group Property has been listed for over one year at a list price of $3,400,000.00 and received no offers at this price.  On the advice of the brokers, in May 2026, J Group reduced the list price to $2,900,000.00.

The expected costs of sale are:
- Approximate Mortgage balance: $1,067,000.00.
- The broker commission: $174,000 or 6% of the gross sale price.
- J Group debt to Syagrus Systems: $550,000.00
- J Group debt to Brett Kostuch: $300,000.00
- Gains tax: $639,538.00.

The estimated net proceeds of $169,462.00 will be paid pro rata to general unsecured creditors, resulting in a range of 2.8% - 5.1% of unsecured claims being paid.

In addition, in August 2030, Class 2 will receive a pro rata share of $20,000.00, paid from the Debtor's disposable income that year.

If Class 2 does not vote to accept the plan and a plan is not confirmed, the Debtor's bankruptcy case will be dismissed.

Executory Contracts: The Debtor does not believe there are any executory contracts or unexpired leases to assume or reject.

Adversary Proceedings and Claim Objections: The Debtor has not initiated any adversary proceedings against third parties and has not been party to any adversary proceedings during the pendency of this case. The Debtor does not intend to, but reserves his right to pursue adversary proceedings, including avoidance claims.  The Debtor reserves the right to object to any claim or proof of claim.

Waiver and Release: Confirmation of the Plan shall constitute a complete waiver and release of all claims of all creditors against the Debtor except as provided for in the Plan, and to the extent authorized by 11 U.S.C. §1141. Confirmation of the Plan will bind creditors to accept payments provided for in the Plan; and will oblige the Debtor to make payments to creditors as

---

[1] In the Syagrus Systems bankruptcy, the following debt is being paid: $539,827.00 to the SBA; $594,052, plus interest to North Star Bank; $1,400,000.00 to Star Bank; $9,650.00 to Crown Bank; and $170,000.00 to unsecured creditors.  These amounts may offset and reduce the total unsecured debt owed by the Debtor pursuant to the personal guarantees.

provided for in the Plan. Creditors holding judgments against the Debtor on account of or with respect pre-petition claims shall not take any action to enforce such judgments.

Continuing Jurisdiction: The Court shall continue to have and assert jurisdiction over the Debtor, parties and parties-in-interest following confirmation in order to hear and determine claims objections, adversary proceedings, and any other matter that may be properly be brought before the court

## MEANS OF EXECUTING THE PLAN

On the Effective Date, the Debtor shall be re-vested with title to all property of the bankruptcy estate. The Debtor shall continue to conduct his financial affairs in the ordinary course.

The Debtor reserves the right to prepay the distributions to any class so long as any prepayments are paid to all holders of claims in that class on a *pro rata* basis.

## ALTERNATIVES TO THE PLAN

The Debtor believes he has pursued every possible alternative to the proposed Plan. Consequently, the Debtor believes that the only realistic alternative to confirmation of the Plan is liquidation under Chapter 7. The Debtor firmly believes that reorganization under Chapter 11 is preferable to liquidation under Chapter 7.  The Debtor believes that general unsecured creditors would receive a substantially smaller recovery on liquidation.  Attached as Exhibit A is the liquidation analysis of the Debtor's assets.  As shown in Exhibit A, creditors will receive less in a chapter 7 liquidation than they will under the Plan.

## FEASIBILITY AND PROJECTIONS

The Debtor believes that the Plan is feasible. The Debtor believes that he can achieve sufficient income to meet his obligations under the Plan. The Debtor has prepared projections that demonstrate the Debtor's anticipated income and expenses over the five-year term of the Plan. These projections are set forth in Exhibit B.

Dated: July 23, 2026                                             Respectfully Submitted,

                                                          *s/ John G. Koch*
                                                          John G. Koch, the Debtor

SIELING LAW, PLLC

By:  *s/ Mary F. Sieling*
          Mary F. Sieling, (#389893)
          12800 Whitewater Dr, Ste. 100, #3201
          Minnetonka, MN  55343
          Phone: 612-325-1191 Email: mary@sielinglaw.com

          *Attorney for the Debtor*

8